IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MACEY & ALEMAN, THOMAS G. MACEY, individually, and JEFFREY J. ALEMAN, individually, <br><br> Plaintiffs, <br><br> v. <br><br> CARLENE M. SIMMONS, and ELIZABETH C. KAMPER, and DAVIS MILES PLLC, <br><br> Defendants. | No. 10-C-6646 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Attorneys Thomas G. Macey and Jeffrey J. Aleman, and their law firm Macey & Aleman (collectively, "Macey & Aleman"), filed suit in the Circuit Court of Cook County against attorneys Carlene M. Simmons and Elizabeth C. Kamper for alleged conduct related to the termination of Simmons's and Kamper's employment with the Macey & Aleman law firm. The case was removed to this court. Simmons and Kamper initially filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) (Dkt. No. 11), which the court denied on April 14, 2011 (Dkt. No. 17).

On November 10, 2011, Macey & Aleman filed their First (Corrected) Amended Complaint (Dkt. No. 56 ("Am. Compl.")) which added claims against Davis Miles PLLC ("Davis Miles"), the law firm that hired Simmons and Kamper after they left Macey & Aleman. Davis Miles now moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Dkt. No.

61.) For the following reasons, Davis Miles's motion is granted.

BACKGROUND

Macey & Aleman is an Illinois partnership with its principal place of business in Chicago, Illinois, and law offices in twenty different states. (Dkt. No. 56 ¶ 5.) Macey & Aleman is managed by four partners from its Chicago office, including Thomas G. Macey, the Owner and Managing Partner, and Jeffrey J. Aleman, a Senior Partner. (*Id.* ¶ 6.) The firm primarily handles bankruptcy cases for Chapter 7 and Chapter 13 debtors but also handles Fair Debt Collection Practice Act cases and provides assistance for various types of injury claims. (*Id.* ¶ 5.)

Simmons and Kamper are Arizona citizens who are licensed to practice law in the State of Arizona. (*Id.* ¶¶ 8, 9.) Prior to July 2010, Simmons, Kamper, and paralegal Sue Lyons were employed at Macey & Aleman's Phoenix office. (*Id.* ¶¶ 8, 9.) On July 2, 2010, however, Simmons and Kamper each sent Macey & Aleman's four partners an e-mail resigning from the Macey & Aleman firm. (*Id.* ¶ 14.) Lyons sent a similar e-mail on July 3. (*Id.* ¶ 15.) The e-mails from Simmons, Kamper, and Lyons each offered to provide assistance to Macey & Aleman's clients for the next two weeks, if requested. (*Id.* ¶¶ 14, 18.)

Simmons, Kamper, and Lyons did not show up for work after the July 4 holiday, with the exception of a few hours that Simmons spent at the office on July 6 and 7. (*Id.* ¶¶ 23, 24.) On July 6, Simmons explained to Deborah Stencel, Macey & Aleman's Attorney Manager, that Kamper and Lyons were not coming into work anymore because they were both working for Macey & Aleman's competitor, Davis Miles. (*Id.* ¶¶ 23, 26.) Simmons also said "I'm supposed to be there right now." (*Id.* ¶ 26.) Stencel then asked Simmons why Simmons, Kamper, and Lyons had not given notice, and Simmons replied that it was because they had not ironed out a deal with Davis Miles until July 2.

(*Id.* ¶ 27.) Stencel also asked why the e-mails were written to imply that they were giving two weeks notice, when they were in fact not giving any notice at all. (*Id.* ¶ 28.) Simmons replied that Davis Miles had told them what to write. (*Id.*) Subsequently, Macey & Aleman discovered that Simmons and Kamper took various property, including copies of confidential client files, with them from Macey & Aleman to Davis Miles. (*Id.* ¶¶ 30-33.)

Beginning July 12, almost all of the approximately 1,000 active clients of Macey & Aleman's Phoenix office began receiving letters from Davis Miles asking them if they wanted to retain Simmons and Kamper as their lawyers at Davis Miles. (*Id.* ¶¶ 34, 35.) The letter exhorted clients that "you must call Macey & Aleman immediately, requesting that they do nothing to jeopardize your case." (*Id.* ¶ 35.) Some clients were contacted additional times by Davis Miles. (*Id.* ¶ 36.) Simmons and Kamper also solicited some clients from Macey & Aleman's Tuscon office. (*Id.* ¶ 38.)

As a result, within 30 days, over 220 Macey & Aleman clients had signed up to follow Simmons and Kamper to Davis Miles. (*Id.* ¶ 54.) The defendants continue to contact other clients to encourage them to switch to Davis Miles. (*Id.* ¶ 55.)

Macey & Aleman's First Amended Complaint brings three counts against Davis Miles, alleging that it is liable for conversion, tortious interference with a business expectancy, and defamation. Pending before the court is Davis Miles's motion to dismiss, in which it contends that the claims against it should be dismissed for lack of personal jurisdiction.

LEGAL STANDARD

The plaintiff "bears the burden of making a prima facie showing of the existence of personal jurisdiction." *Citadel Group Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). "A

federal court exercising diversity jurisdiction has personal jurisdiction only where a court of the state in which it sits would have such jurisdiction." *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 855 n.2 (7th Cir. 2011). To determine if personal jurisdiction exists, courts must "consider the Illinois long-arm statute, the Illinois constitution, and the federal constitution." *Citadel Group*, 536 F.3d at 760. Illinois's long-arm statute provides that courts may exercise jurisdiction "on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States," 735 ILCS 5/2–209(c), so the inquiry under the statute collapses into the constitutional inquiries. *Citadel Group*, 536 F.3d at 761. Moreover, neither federal courts nor Illinois courts have identified a case that has found jurisdiction under the federal constitution without also finding jurisdiction under the Illinois constitution. *See id.*. Therefore, the court need only proceed with the federal constitutional analysis. *Id.*

The federal constitutional analysis requires that:

> the defendant must have minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Those contacts may not be fortuitous. Instead, the defendant must have purposefully established minimum contacts within the forum State before personal jurisdiction will be found to be reasonable and fair. Crucial to the minimum contacts analysis is a showing that the defendant should reasonably anticipate being haled into court in the forum State, because the defendant has purposefully availed itself of the privilege of conducting activities there.

*Kinslow v. Pullara*, 538 F.3d 687, 691 (7th Cir. 2008) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002)). If a defendant's contacts with the forum are not numerous enough to justify the exercise of general jurisdiction in all cases, "a state may exercise specific jurisdiction when the defendant has a lesser degree of contact with the state, but the litigation arises out of or is related to those contacts." *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996). Specific jurisdiction requires that "(1) the defendant has purposefully directed his activities at the

forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

## ANALYSIS

Macey & Aleman contends that the court has specific jurisdiction over Davis Miles under the *Calder* "effects test," which provides that specific jurisdiction exists in intentional tort cases if the plaintiff can show that the defendant engaged in intentional conduct expressly aimed at the forum state with the knowledge that the plaintiff would be injured there. *See Tamburo*, 601 F.3d at 703; *see also Calder v. Jones*, 465 U.S. 783, 789-90 (1984).

The federal courts of appeals have divided over the breadth of the "express aiming" requirement. Some courts read it broadly, "requiring only conduct that is 'targeted at a plaintiff whom the defendant knows to be a resident of the forum state,'" regardless of whether the conduct is directed at the forum. *Tamburo*, 601 F.3d at 704 (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). Other courts read the "express aiming" requirement narrowly and "require that the forum state be the 'focal point of the tort.'" *Id.* (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1074 n.9 (10th Cir. 2008)).

The Seventh Circuit addressed the two conflicting interpretations in *Tamburo*, noting that at that time the Circuit hadn't "firmly settled" on either of the two alternatives. *Id.* After surveying its precedent, however, the Seventh Circuit concluded in dictum[1] that even its broadest decision,

---

[1] The court's comment was ultimately irrelevant to the holding in *Tamburo*, because the court found that the facts involved conduct specifically directed at the forum, and so it was not necessary to decide whether *Janmark* compelled the finding of jurisdiction even on a lesser showing.

*Janmark*, "ultimately focused on more than the fact that the injury had occurred in Illinois." *Id.* at 706 (citing *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997)).

Although it was only dictum, *Tamburo*'s comment on *Janmark* is an accurate description of the case. The *Janmark* case dealt with a claim of unfair competition by an Illinois shopping cart manufacturer against a California shopping cart manufacturer. *Janmark*, 132 F.3d at 1201-02. The California manufacturer had threatened a New Jersey customer of the Illinois manufacturer in a telephone call, thereby causing the New Jersey customer to cease buying shopping carts from the Illinois manufacturer. *Id.* at 1202. Even though the telephone call took place in California and New Jersey, the court held that the California manufacturer was subject to Illinois jurisdiction because it "acted with the purpose of interfering with sales originating in Illinois." *Tamburo*, 601 F.3d at 706. Because the interrupted sales originated in Illinois, the tortious behavior in *Janmark* was directed at Illinois.

Accordingly, *Janmark* and other Seventh Circuit cases are "consistent in requiring 'something more' beyond injury in the forum state from an alleged intentional tort" before finding personal jurisdiction under the effects test. *uBID, Inc. v. The GoDaddy Group, Inc.*, 623 F.3d 421, 427 n.1 (7th Cir. 2010); *accord id.* ("*Calder* can be read as authorizing personal jurisdiction in the home state of the victim of almost any alleged intentional tort, but it need not and should not be read quite so broadly."); *Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985) ("We do not believe that the Supreme Court, in *Calder*, was saying that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed a tort against the plaintiff."). Rather than merely resting on the fact that the plaintiff felt harm in the forum state, therefore, the plaintiff must show that there is a connection "between

the allegedly tortious conduct and the forum state itself." *Tamburo*, 601 F.3d at 706.

Here, Macey & Aleman has failed to provide any evidence of a connection between Davis Miles's allegedly tortious conduct and Illinois. All of the events leading up to the tort and the tortious conduct itself took place in Arizona. The employees that Davis Miles allegedly lured away from Macey & Aleman all lived and worked in Arizona as employees of Macey & Aleman's Phoenix office, and the confidential information Davis Miles allegedly converted was located in Arizona. The clients Davis Miles allegedly stole were clients of Macey & Aleman's Phoenix office who presumably lived in and around Phoenix. The allegedly defamatory letter sent to those clients was thus sent only to Arizona, and not to Illinois. Unlike in *Janmark*, where the tortious behavior was directed at disrupting commercial relationships originating in Illinois, all of the commercial relationships with which Davis Miles allegedly interfered were entirely in Arizona. The "focal point" of the tort is thus Arizona, not Illinois. Indeed, Illinois has no connection to the claim against Davis Miles other than that Macey & Aleman is an Illinois partnership and has its principal place of business in Chicago.

Macey & Aleman contends that the economic harm it suffered in Illinois is sufficient to establish that the injury from the tort occurred at least in part in Illinois, and that it is therefore irrelevant that the rest of the tortious conduct occurred elsewhere. *See Riddell, Inc. v. Monica*, No. 03 C 3309, 2003 WL 21799935, at *3 (N.D. Ill. July 25, 2003) (quoting *Janmark* for the proposition that "'the state in which the victim of a tort suffers the injury may entertain a suit against the accused tort feasor'"); *see also Int'l Molding Machine Co. v. St. Louis Conveyor Co.*, No. 01 C 8305, 2002 WL 1838130, at *4 (N.D. Ill. Aug. 12, 2002). Bad financial consequences to a firm in Illinois, however, are not the same as a tortious *injury* occurring to the firm in Illinois, as the *Janmark* court

recognized. *See Janmark*, 132 F.3d at 1202 ("Ruining [a shipment of carts in New Jersey by pushing them into the Atlantic Ocean] would diminish *Janmark*'s bank accounts in Illinois, but this would not relocate the tort from New Jersey to Illinois."); *see also* Black's Law Dictionary 801 (8th ed. 2004) ("Some authorities distinguish *harm* from *injury*, holding that while *harm* denotes any personal loss or detriment, *injury* involves an actionable invasion of a legally protected interest."). In this case, the injury occurred solely in Arizona when Macey & Aleman's relationships with its employees and customers were disrupted there, and when Macey & Aleman's reputation was diminished there by the allegedly defamatory letter. The injury did not occur in Illinois, even though Macey & Aleman suffered harm at its Chicago office because of the financial consequences of the injury.

Macey & Aleman has thus failed to meet *Calder*'s requirement that it show that Davis Miles expressly aimed its conduct at Illinois, so it has failed to establish that the court has personal jurisdiction over Davis Miles. Davis Miles's motion to dismiss is accordingly granted.

## CONCLUSION

For the reasons listed above, Davis Miles's "Motion to Dismiss for Lack of Personal Jurisdiction" (Dkt. No. 61) is granted. Defendant Davis Miles PLLC is dismissed from this case.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN

Chief Judge, United States District Court

Date: February 15, 2012